1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10   VALERA REBECCA FOSTER,            )    Case No. CV 08-6287 PJW
                                       )
11              Plaintiff,             )
                                       )    MEMORANDUM OPINION AND ORDER
12      v.                             )
                                       )
13   MICHAEL J. ASTRUE,                )
     Commissioner of the              )
14   Social Security Administration,   )
                                       )
15              Defendant.             )
     _____)

16

17                        I. INTRODUCTION

18        Before the Court is Plaintiff's appeal of a decision by Defendant

19   Social Security Administration ("the Agency"), denying her

20   applications for Disability Insurance benefits ("DIB").  Plaintiff

21   claims that the Administrative Law Judge ("ALJ") erred in: 1)

22   assessing her residual functional capacity; 2) rejecting a finding

23   from a previous administrative decision that she suffered from a

24   severe mental impairment; 3) discounting her testimony; and 4) failing

25   to consider an Office of Personnel Management ("OPM") decision

26   approving her application for disability retirement benefits.  (Joint

27   Stip. at 3, 11, 14, 20.)  As explained below, because the Agency's

28   decision is supported by substantial evidence, it is affirmed.

1                              II. BACKGROUND

2          On April 27, 2006, Plaintiff protectively filed for DIB.

3    (Administrative Record ("AR") 135-39.)   The Agency denied the

4    application.   (AR 102-06.)   Plaintiff then requested and was granted a

5    hearing before an ALJ.   (AR 109, 113-19.)   On January 9, 2008,

6    Plaintiff appeared with counsel at the hearing and testified.   (AR 33-

7    78.)   On March 12, 2008, the ALJ issued a decision denying benefits.

8    (AR 14-23.)   After the Appeals Council denied Plaintiff's request for

9    review, (AR 1-4), she commenced this action.

10                              III. ANALYSIS

11         A.   The ALJ's Residual Functional Capacity Assessment

12         In her first claim of error, Plaintiff challenges the ALJ's

13   residual functional capacity assessment, arguing that it did not

14   account for work-related limitations found by treating physicians

15   Vernon Williams and Drayton Graham.   (Joint Stip. at 3-5.)   There is

16   no merit to this claim.

17         Dr. Williams, an orthopedist who saw Plaintiff at the Kerlan-Jobe

18   Orthopaedic Clinic between August 2000 and March 2003, and for two

19   follow-up evaluations in 2006, offered diagnoses and treatment

20   recommendations that remained essentially unchanged throughout that

21   period.   (AR 251-61, 273-80, 283-310, 312-20.)   After initially

22   examining Plaintiff on August 29, 2000, he noted spasm, tenderness,

23   and a decreased range of flexion and extension in Plaintiff's cervical

24   area, and also noted MRI results that showed small central disc bulges

25   and a possible small calcified extrusion in Plaintiff's cervical

26   spine.   (AR 275, 278-79.)   He diagnosed cervical degenerative joint

27   disease, cervical radiculitis, lumbar strain, and cervical myofascial

28   pain.   (AR 279.)   Dr. Williams recommended physical therapy,

                                    2

1  "biobehavioral" treatment, Vicodin, and myofascial ointment.  (AR

2  279.)  He noted that trigger point injections might be helpful.  (AR

3  280.)  He made similar findings after additional examinations on May

4  10, July 16, and December 11, 2001, and February 28, 2002.  (AR 290,

5  295, 299, 303.)

6      On December 11, 2001, Dr. Williams noted that the biobehavioral

7  treatments had not been authorized by Plaintiff's insurance carrier,

8  and stated that "I am reluctantly recommending that she have a

9  functional capacity evaluation so that she can be made permanent and

10  stationary."  (AR 299-300.)  Dr Williams conducted the functional

11  evaluation on February 28, 2002, concluding that, "[e]ssentially,

12  there is no significant interval changes from her initial evaluation."

13  (AR 302.)  He determined that Plaintiff would be limited to sedentary

14  work "according to the U.S. Department of Labor standards based on an

15  eight-hour day," adding that "she also complains of increase in pain

16  with prolonged sitting so that she may require frequent breaks from

17  sitting and ability to stand and stretch for three to four minutes at

18  a time, every two to three hours."[1]  (AR 304.)

19      Dr. Graham, an internal medicine specialist, was Plaintiff's

20  primary care physician from at least March 1997.  (AR 369-72.)  On May

21  9, 2000, he diagnosed her with trapezius myofascitis and tension

22

23  _____

24      [1]  Dr. Williams thereafter noted no change in Plaintiff's
   condition in October 2002 and March 2003, though on the latter date he
25  commented that "I felt [as of February 2002] that she had demonstrated
   ability to participate in sedentary work . . . .  She should be able
26  to participate in vocational rehabilitation or school/training
   activities."  (AR 305, 308.)  On April 24, 2006, Dr. Williams opined
27  that a new functional evaluation showed that Plaintiff "is capable of
   sedentary work," and also that "[t]here was self-limiting behavior
28  (due to pain) with inconsistencies on several tests."  (AR 317.)

1  headaches.  (AR 395.)  In treatment records between May 2000 and

2  September 2003, Dr. Graham noted tenderness of the trapezius and

3  Plaintiff's complaints of pain, and prescribed Vicodin and Celebrex,

4  among other medications.  (AR 398-99, 403-06, 408, 410.)

5      On March 9, 2006, Dr. Graham completed a physical residual

6  functional capacity assessment form, in which he noted that, from as

7  early as July 15, 1998, Plaintiff could not lift or carry any weight;

8  could stand or walk "less than" two hours in an eight-hour workday;

9  could sit less than six hours in an eight-hour workday; would need a

10  job that permitted shifting positions at will; would need to take

11  "hourly breaks for 15 minutes" during a normal workday; and would be

12  absent from work "more than three times a month" on average owing to

13  her impairments.  (AR 218, 221.)  He also opined that Plaintiff was

14  unable to pull with her arms without pain, could never climb, crouch,

15  kneel, or crawl, and only occasionally balance, and needed to avoid

16  breezes and cool temperatures.  (AR 219.)

17      At the administrative hearing on January 9, 2008, medical expert

18  Dr. Stephen Gerber testified that he gave "very heavy weight" to the

19  opinion of Dr. Williams that Plaintiff could perform at a sedentary

20  level of activity because his notes were very detailed and because he

21  was an orthopedist.  (AR 56-57.)  Dr. Gerber assigned less weight to

22  Dr. Graham's more restrictive functional assessment because Dr.

23  Graham's notes were "far less detailed," he had made certain

24  diagnoses, such as fibromyalgia syndrome, that were unsupported by any

25  evidence, and he was not a specialist in the relevant field.  (AR 57-

26  58.)  Based on his review of the medical record, Dr. Gerber opined

27  that, as of December 2003, Plaintiff could stand and walk at least two

28  hours in an eight-hour workday, but was unlimited in her ability to

4

1  sit; could lift and carry at least ten pounds; and was restricted to
2  only occasional overhead reaching and pushing and pulling using her
3  arms.  (AR 58.)

4      In his decision, the ALJ determined that Plaintiff had the
5  residual functional capacity to perform sedentary work, except that
6  she could only occasionally perform "postural activities, overhead
7  reaching, and pushing/pulling."  (AR 17.)  The ALJ noted that this
8  determination was consistent with Dr. Williams' February 2002
9  functional evaluation.  (AR 20.)  The ALJ also noted that, according
10 to the vocational expert, Plaintiff could perform her past work as it
11 is generally performed even with the requirement that she needed to
12 stand and stretch and take frequent breaks from sitting.  (AR 20 &
13 n.1.)  The ALJ rejected Dr. Graham's residual functional capacity
14 assessment.  (AR 21.)

15     Plaintiff argues that the ALJ's residual functional capacity
16 determination was inconsistent with Dr. Williams' opinion because it
17 did not include a requirement that Plaintiff be allowed to take
18 frequent breaks from sitting and to stand and stretch every two to
19 three hours.  (Joint Stip. at 3.)  She contends that "[t]he ALJ
20 interpreted Dr. Williams' restriction on 'frequent breaks from
21 sitting' as 'the need for 10 minute breaks every hour, during which
22 time she would cease all work,'" which restriction would have
23 precluded all work, according to the testimony of the vocational
24 expert.  (Joint Stip. at 4, 9.)  There is no merit to this claim.

25     The ALJ did not interpret Dr. Williams' statement that Plaintiff
26 "may require frequent breaks from sitting" as a requirement that she
27 cease all work for ten minutes each hour.  At the hearing, the
28 vocational expert testified that a person with Plaintiff's vocational

and educational background who could do sedentary work, occasionally bend, crouch, and crawl, and have the opportunity to get up for three or four minutes every few hours could perform her past work.  (AR 71-72.)   The vocational expert also testified that an individual limited to sedentary work who required frequent breaks from sitting could work "in this type of job . . . because she wouldn't be sitting all the time.  She'd be [doing] different kinds of tasks."  (AR 73.)

The ALJ then added, "I guess it also depends . . . on what you mean by frequent.  If frequent means once an hour or once every five minutes or ten minutes, I think that would make a difference."  (AR 74.)   He continued, "perhaps a way of phrasing would be typically in a sedentary job such as the one that [Plaintiff] was doing how often on an hourly basis . . . would a person be allowed to have a break?  Say a break for a few minutes.  By that I mean that person wouldn't have to be typing, would not be sitting.  Could be changing positions, stretching, or doing whatever."  (AR 74.)   The vocational expert responded, "that would not be a problem because . . . she's not required to sit continuously and she controls her own time."  (AR 74.)

The ALJ then added, "[n]ow if by break you mean the person would have [to] cease all activities for ten minutes every hour that would preclude the work[,]" to which the expert testified, "Right.  If she had to do nothing . . . just go off and lay down some place or do something, that would preclude [work].  But in this kind of job the administrative assistant you pretty much control your own time because you do different tasks."  (AR 74-75.)

In sum, it is clear that the ALJ did not interpret Dr. Williams' opinion to mean that Plaintiff was required to have a ten-minute break every hour but, rather, that she would need a break from sitting for a

1  few minutes each hour and would be able to do that in her old job.
2  This was a reasonable inference to be drawn from the record.  *See*
3  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).  Nor has Plaintiff
4  pointed to any medical evidence in the record that would support her
5  contention that she needed a ten-minute break every hour, during which
6  she would have to cease all activities.  For these reasons, this claim
7  is rejected.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.
8  2005) (affirming ALJ where he "took into account those limitations for
9  which there was record support that did not depend on [the claimant]'s
10  subjective complaints.")

11      Plaintiff also contends that the ALJ did not provide specific and
12  legitimate reasons for rejecting Dr. Graham's residual functional
13  capacity assessment.  (Joint Stip. at 4-5.)  Again, the Court
14  disagrees.  The ALJ found that Dr. Graham's residual functional
15  capacity assessment was "so extreme as to be implausible."  (AR 21.)
16  Plaintiff takes issue with this finding, noting that Dr. Gerber, the
17  medical expert, also found that Plaintiff would be unable to lift or
18  carry more than ten pounds or stand and walk more than two hours in an
19  eight-hour workday.  (Joint Stip. at 4.)  This argument, however,
20  ignores Dr. Graham's other findings that Plaintiff could "never" lift
21  anything, even if it weighed less than ten pounds; would require
22  hourly breaks for 15 minutes; would be absent from work more than
23  three times a month; could "never" perform any postural activities
24  other than balancing; and avoid breezes and cool temperatures,
25  limitations which were not found by any other physician and which were
26  significantly more restrictive than those found by Dr. Williams.

27      Because Dr. Graham's assessment conflicted with those of Dr.
28  Williams and Dr. Gerber, the ALJ had to provide specific and

7

legitimate reasons for rejecting it. *Orn v. Astrue*, 495 F.3d 625, 632
(9th Cir. 2007).  He did so here.  He noted that Dr. Williams, unlike
Dr. Graham, was an orthopedic specialist.  (AR 21.)  In general, the
opinions of specialists take priority over the opinions of non-
specialists.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).
Second, he found that Dr. Graham's reports were not as detailed as Dr.
Williams'.  (AR 21.)  An ALJ can discount a doctor's opinion that is
conclusory.  *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1228
(9th Cir. 2009).  And third, he found that Dr. Graham appeared to base
his findings on Plaintiff's own subjective complaints, which the ALJ
discounted.  (AR 21.)  This, too, is a legitimate reason for rejecting
a doctor's opinion.  *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595,
602 (9th Cir. 1999).

Because the ALJ's residual functional capacity assessment was
based on substantial evidence and was not founded on an incorrect
application of the law, this claim does not merit remand or reversal.
*See Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.
2009).

B.   Plaintiff's Alleged Mental Impairment

In her second claim of error, Plaintiff contends that the ALJ
erred in rejecting the findings regarding Plaintiff's alleged mental
impairment made by another ALJ in a previous decision.  For the
following reasons, this claim is rejected.

The ALJ found that, because a prior ALJ's decision denying
benefits had not been appealed, the issue of Plaintiff's disability
between her alleged onset date of July 15, 1998 and the date of the
earlier decision (May 8, 2000) was res judicata.  (AR 14.)  The ALJ
then found that Plaintiff had rebutted the presumption of continuing

8

1  non-disability by showing changed circumstances and, therefore, made

2  new residual functional capacity findings. (AR 15.) The ALJ also

3  found that the prior determination that Plaintiff was limited to

4  "semi-skilled" work as a result of her alleged severe mental

5  impairments had been undermined by the longitudinal record, which

6  showed no mental health treatment between May 2000 and December 2003,

7  and concluded that Plaintiff did not suffer from any mental

8  impairment. (AR 15, 22.)

9      Plaintiff contends that this was error because the previous ALJ

10  had found that Plaintiff had a severe psychiatric impairment that was

11  "secondary" to her medical condition. (Joint Stip. at 11; AR 92-93).

12  Plaintiff argues that, because the record shows that her physical

13  condition deteriorated after the prior administrative decision of May

14  2000, it follows that her psychiatric impairment could not have

15  improved. (Joint Stip. at 11.) There is no basis for this argument.

16      The ALJ's interpretation of the medical record--that the lack of

17  "any diagnosis or treatment of a mental impairment in the 2000-2003

18  period" showed that Plaintiff did not suffer from such an impairment,

19  (AR 15)--was a reasonable one. Plaintiff testified at the 2008

20  hearing that she had been seeing a psychiatrist in 1998, but did not

21  testify about any mental health treatment after 1998. (AR 69.) Nor

22  did she contend in this court that she sought or received any

23  treatment after 1998. Because the ALJ's determination that Plaintiff

24  did not suffer from a severe mental impairment between May 2000 and

25  December 2003 was a reasonable one and, further, because it is

26  supported by substantial evidence in the record, it is upheld. *See*

27  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the

28

1  evidence is susceptible to more than one rational interpretation, the

2  court may not substitute its judgment for that of [the ALJ]").[2]

3      C.  Credibility Determination

4      In her third claim of error, Plaintiff contends that the ALJ

5  failed to provide "specific, clear and valid reasons" for finding her

6  not credible.  (Joint Stip. at 15.)  Plaintiff points out that the

7  medical expert testified that her complaints were supported by

8  examination findings and test results, and that treating orthopedist

9  Dr. Williams stated that he "strongly disagree[s] . . . that her

10  complaints are out of proportion to her physical examination findings

11  or to her diagnostic imaging findings."  (Joint Stip. at 15.)  This

12  claim is rejected.

13      ALJ's are tasked with judging the credibility of witnesses.  In

14  making a credibility determination, an ALJ may take into account

15  ordinary credibility evaluation techniques.  *Smolen*, 80 F.3d at 1284.

16  Where, as here, a claimant has produced objective medical evidence of

17  an impairment which could reasonably be expected to produce the

18  symptoms alleged and there is no evidence of malingering, the ALJ can

19  only reject the claimant's testimony for specific, clear, and

20

21      [2]  The Court further observes that the previous ALJ stated that
he was "giving every reasonable benefit of doubt to [Plaintiff]'s
22  subjective complaints in limiting her to semi-skilled work," (AR 91),
whereas the ALJ who issued the decision under review found Plaintiff
23  not entirely credible.  (AR 19-22.)  Moreover, although Plaintiff
contends that the previous ALJ based his decision on the opinions of
24  treating psychologist Dr. Gary Strahle, the record shows that the ALJ
gave Dr. Strahle's assessments "little weight" because he did not
25  produce any treating records, his conclusions were "nothing more than
recitations of [Plaintiff]'s self-reported limitations," and the
26  second and third reports he submitted "were obviously copied from the
first report, by someone whose creativity in spelling . . . is
27  exceeded only by unorthodoxy in grammar . . . . [Dr. Strahle]
obviously pays little attention to what he signs."  (AR 89.)
28

convincing reasons. *Id.* at 1283-84.  In making a credibility determination, the ALJ may take into account, among other things, ordinary credibility evaluation techniques and the claimant's daily activities. *Id.* at 1284.  If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ noted Plaintiff's allegations that reaching overhead causes her pain, as does stooping, lifting, bending, typing, writing, holding her head in one position, and reaching forward. (AR 18, 42-45.)  Plaintiff also alleged that she could not stretch forward with both arms, carry groceries, carry more than ten or fifteen pounds, do more than a few minutes of chores, or drive for more than 30 minutes. (AR 18, 46-48.)  She testified that she could do some of her past work, but not the part that required her to lift files or folders, bend, and stoop, and that she could not have done even "similar" work eight hours a day, 40 hours a week, because of the pain she suffered. (AR 18, 49-51.)

The ALJ concluded that Plaintiff's statements regarding the effects of her alleged symptoms were not credible to the extent that they were inconsistent with her residual functional capacity. (AR 19.)  Contrary to Plaintiff's contentions, the ALJ offered a number of specific reasons for discounting her testimony.  First, he found that his residual functional capacity assessment was consistent with the functional evaluation made by Dr. Williams, the treating orthopedist, and he also noted that Dr. Williams had repeated in March 2003 and March 2006 his opinion that Plaintiff could do sedentary work. (AR 20.)  This was a legitimate basis for disbelieving Plaintiff's

11

1   subjective symptom testimony.  *See*, *e.g.*, *Carmickle v. Comm'r, Soc.*
2   *Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (affirming ALJ's
3   rejection of claimant's testimony that conflicted with contrary
4   opinion of treating doctor).[3]

5       Additionally, the ALJ noted that Plaintiff did not receive
6   treatment at the Kerlan-Jobe Orthopaedic Clinic between her initial
7   evaluations in 1997 and 1998, and July 2000; that she was not seen by
8   Dr. Williams between March 2003 and March 2006; and that she failed to
9   keep three appointments with Dr. Graham in 2003, and four more in
10  2004.  (AR 19, 20, 21.)  This justification is supported by
11  substantial evidence in the record, (AR 250-51, 311, 410-11), and is a
12  legitimate reason for discounting Plaintiff's credibility.  *See Orn*,
13  495 F.3d at 638 ("[A]n unexplained, or inadequately explained, failure
14  to seek treatment may be the basis for an adverse credibility
15  finding[.]").

16      Finally, the ALJ noted that the level of daily activity reported
17  by Plaintiff in a written statement was not inconsistent with his
18  finding that she could work at the sedentary level.  (AR 22.)  While
19  the Court is not convinced that this reason is supported by the
20  record, i.e. Plaintiff stated, for example, that she could do chores
21  for 15 minutes before needing a rest break of 15-20 minutes and that
22  she naps "constantly", (AR 179), it nevertheless finds that this error
23  does not undermine the ALJ's credibility determination.  *See*

24

25      [3]  Although, as Plaintiff contends, Dr. Williams noted in May
    2001 that her complaints were not "out of proportion" to the medical
26  evidence, (AR 291), Dr. Williams himself did not incorporate all the
    limitations claimed by Plaintiff in the functional capacity evaluation
27  report he prepared in February 2002, and he continued to opine that
    she could perform sedentary-level work in 2003 and 2006.  (AR 304,
28  307, 317.)

1   *Carmickle*, 533 F.3d at 1162-63 (finding that ALJ's reliance on two

2   invalid reasons supporting his adverse credibility finding was

3   harmless because substantial evidence remained to support his

4   conclusions).  Because the ALJ's credibility determination was

5   supported by substantial evidence in the record, this claim does not

6   warrant remand or reversal.  *See id.*

7           D.   Previous Administrative Disability Determination

8           In her fourth claim of error, Plaintiff contends that the ALJ

9   erred by failing to address OPM's approval of her application for

10  disability retirement benefits under the Federal Employees Retirement

11  System.  (Joint Stip. at 20.)  Plaintiff argues that, under Social

12  Security Ruling ("SSR") 06-03p, the ALJ was required to consider that

13  decision.  (Joint Stip. at 20.)  This claim, too, is without merit.

14          First and foremost, the ALJ expressly adopted the findings and

15  conclusions of the prior ALJ except for the residual functional

16  capacity analysis and mental impairment finding.  (AR 22.)  In that

17  previous decision, the prior ALJ did not give "controlling weight" to

18  the OPM decision, which was issued in August 1999, (AR 500-03), and he

19  provided a number of reasons why.  (AR 88-90.)  Plaintiff did not

20  appeal that decision and has failed to demonstrate that the second ALJ

21  was required to revisit the issue under SSR 06-03 or any other

22  authority.[4]  *C.f. McCartey v. Massanari*, 298 F.3d 1072, 1075-76 (9th

23  Cir. 2002) (finding error where the ALJ inexplicably ignored a VA

24  disability determination that was in the record).

25  ───────────

26      [4]  SSR 06-03p provides, in relevant part, that "we are required
    to evaluate all the evidence in the case record that may have a
27  bearing on our determination or decision of disability, including
    decisions by other governmental and nongovernmental agencies.
28  Therefore [such evidence] cannot be ignored and must be considered."

1    Even assuming that the ALJ erred by not directly addressing the
2    OPM decision, any error was harmless.  The previous ALJ explained in
3    some detail why OPM's determination did not bind the Agency, and why
4    it was not given controlling weight.  (AR 88-90.)  Plaintiff has not
5    attempted to show why the previous ALJ's decision was wrong.  Because
6    any error by the ALJ in failing to re-address the OPM decision was
7    "inconsequential to the ultimate nondisability determination," it was
8    harmless.  *See Carmickle*, 533 F.3d at 1162.  For these reasons, the
9    Agency's decision is affirmed.

10

11    IT IS SO ORDERED.

12    DATED: December 15, 2009.

13

14    _____
15    PATRICK J. WALSH
      UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28    S:\PJW\Cases-Soc Sec\FOSTER, V 6287\Memo_Opinion.wpd